IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASCADES TISSUE GROUP – PENNSYLVANIA, INC.,<br><br>    Plaintiff and<br>    Counter-defendant,<br><br>  v.<br><br>UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, et al.,<br><br>    Defendants and<br>    Counterclaimants. | CIVIL ACTION<br>NO. 14-1117 |

## OPINION

**Slomsky, J.**                                        August 6, 2015

### I. INTRODUCTION

This case concerns a labor dispute between a tissue company and its union over the arbitrability of a grievance filed by the union on behalf of a discharged employee. Cascades Tissue Group ("Plaintiff") and the United Steelworkers Union and Local No. 1448 (collectively the "Union" or "Defendants") are parties to a Collective Bargaining Agreement ("CBA"). (Doc. No. 1 ¶ 2.) After Plaintiff fired an employee who was a member of the Union, the Union filed a grievance in accordance with the CBA's prescribed grievance procedure. (Id. ¶ 15.) This procedure included certain steps the Union should follow before filing for arbitration. The Union, however, apparently bypassed the last step of the grievance procedure, and instead filed to have the dispute arbitrated. (Id. ¶ 23.) As a result, Plaintiff alleges that Defendants violated the CBA. (Id. ¶ 23.) For this reason, Plaintiff seeks a ruling from the Court that the arbitration

proceeding initiated by Defendants violated the CBA and that Defendants should be enjoined from pursuing arbitration.

Plaintiff brought this action on February 24, 2014 seeking a declaratory judgment pursuant to the Labor-Management Relations Act, 29 U.S.C. § 185(c) against the Union. (Doc. No. 1.)  On April 25, 2014, Defendants filed an Answer including a counterclaim against Plaintiff to compel arbitration. (Doc. No. 5.)  On May 15, 2014, Plaintiff filed an Answer to the Union's counterclaim reiterating its argument that it cannot be compelled to arbitrate the grievance. (Doc. No. 9.)

Before the Court are Plaintiff and Defendants' Motions for Judgment on the Pleadings filed respectively on May 23, 2014 and June 6, 2014. (Doc. Nos. 11, 12.)  Plaintiff seeks an Order to permanently stay the arbitration proceeding while Defendants seek to compel arbitration. (Id.)  For reasons that follow, the Court will deny Plaintiff's Motion for Judgment on the Pleadings, grant Defendants' Motion for Judgment on the Pleadings, and permit the matter to proceed to arbitration.

## II. BACKGROUND

### A. The Underlying Grievance

Plaintiff and Defendants are parties to a CBA governing the terms and conditions of Plaintiff's employees. (Doc. No. 1 ¶ 8.)  The CBA contains a grievance procedure that details how an employee can contest an adverse employment action.  In relevant part, the grievance procedure reads as follows:

> E. Grievances are to be handled according to the following steps:
>
> 1. The employee . . . shall refer any complaint to the available Supervisor or Superintendent and if at the end of twenty-four (24) hours, the employee receives no satisfaction, he shall file a formal written grievance. Such grievance must be filed with the company no later

> than five (5) working days after the cause for such complaint has occurred.
>
> \*\*\*
>
> 3. . . . . In case of a termination grievance filed, the grievance shall move from first step to third step to be scheduled for the first available meeting with the International Representative. . . .
>
> 4. If the grievance is not settled as outlined in Step #3, the matter shall be submitted to the Union body in no longer than 60 days at a regularly scheduled monthly meeting for their decision as to whether the question is to be submitted to arbitration as hereinafter described. Such decision by the Union body must be relayed to the Company no later than five (5) days from the time the decision has been made. Then at the discretion of either party to the Labor Agreement, the grievance may be submitted for arbitration.
>
> If the grievance is not filed for arbitration within 60 days of union disposition, the grievance will be withdrawn without prejudice or precedent.

(Doc. No. 1 at 14-15.)

On or about June 19, 2013, Plaintiff suspended one of its employees, Walter Puchalski, for misconduct. (Doc. No. 1 ¶ 13.) On June 28, 2013, Plaintiff terminated Mr. Puchalski. (Id. ¶ 14.) The next day, June 29, 2013, Defendants, on behalf of Mr. Pulchalski, followed the first step of the grievance procedure and filed a formal written report alleging that Plaintiff violated the CBA by unjustly terminating Mr. Pulchalski. (Id. at 18.)

On July 11, 2013, the grievance was denied. (Id. at 18.) Pursuant to Article 15(E)(3) of the CBA, Defendants appealed in accordance with the third step because the grievance concerned a termination of employment. (Id. at 15.) On October 9, 2013, the third step appeal also was denied. (Id. ¶ 17.)

After the third step denial, Defendants did not proceed to step four, which, as noted above, requires the following:

> 4. If the grievance is not settled as outlined in Step #3, the matter shall be submitted to the Union body in no longer than 60 days at a regularly

>scheduled monthly meeting for their decision as to whether the question is to be submitted to arbitration as hereinafter described.

(Doc. No. 1 at 15.) Specifically, Defendants never voted on whether to arbitrate Mr. Puchalski's grievance at their regularly scheduled monthly meetings in accordance with step four of the grievance procedure, and Plaintiff was not informed of Defendants' intention to arbitrate within the deadline. (Id.)

Nevertheless, on February 3, 2014, 127 days after the third step appeal was denied, Plaintiff received a letter from the American Arbitration Association (the "AAA"), informing Plaintiff that Defendants had filed a demand for arbitration on January 31, 2014. (Doc. No. 5, Ex. C.) The AAA noted in the letter that the demand was filed "in accordance with a Collective Bargaining Agreement." (Id.) Upon receipt of the letter, Plaintiff notified the AAA and Defendants of its refusal to arbitrate the grievance involving Mr. Puchalski's termination. (Id. at Ex. D.)

### B. Plaintiff's Request to Stay Arbitration and Defendants' Counterclaim to Compel Arbitration

On February 24, 2014, following Defendants' refusal to withdraw the demand for arbitration, Plaintiff filed a Complaint with this Court requesting a declaratory judgment that it had no duty to arbitrate the grievance. (Doc. No. 1.) On April 25, 2014, Defendants filed an Answer with the counterclaim. (Doc. No. 5.)

In the Answer, Defendants "admit[ted] that they did not submit the grievance regarding Mr. Puchalski's termination to the membership for a vote relative to arbitration." (Doc. No. 5 ¶ 18.) Defendants contended, however, that "such a vote is no longer required by the Constitution or by-laws governing the local, and that Defendant[s'] procedure for deciding whether to arbitrate a particular grievance [now] are strictly a matter of internal union

4

governance." (Id.) Moreover, in Defendants' counterclaim, they allege that Plaintiff should be compelled to arbitrate the grievance because an arbitrator usually resolves procedural matters such as whether a grievance procedure was followed. (Doc. No. 5 at 7-8.)

## III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings. See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for motions pursuant to Rule 12(b)(6) and Rule 12(c)). Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to [the nonmoving party] and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986). A motion for judgment on the pleadings will only be granted where "the [nonmoving party] would not be entitled to relief under any set of facts that could be proved." Green v. Fund Asset Mgmt., L. P., 245 F.3d 214, 220 (3d Cir. 2001).

Here, the parties filed Counter-Motions,[1] which "must be considered separately and

---

[1] We note that "cross-motion" is often a misnomer for what is actually a "counter-motion." Opposing parties file counter-motions while parties on the same side file cross-motions. In the instant case, we are faced with a counter-motion similar to the motion filed in SuperMedia

5

should not be interpreted necessarily to mean that judgment should be entered on either one of them." SuperMedia LLC v. Morley, No. 13-0176, 2014 WL 5023386, at *3 (E.D. Pa. Oct. 8, 2014) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Each party must establish that there are no material issues of facts in order for judgment on the pleadings to be granted. Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011).

## IV.   ANALYSIS

In Plaintiff's Motion for Judgment on the Pleadings and Defendants' Counter-Motion, there is only one issue to be resolved by the Court: whether this Court is the proper forum to determine if Defendants violated the CBA when it bypassed step four of the grievance procedure and submitted Mr. Pulchalski's termination to an arbitrator.

Defendants contend that whether they were permitted to proceed to arbitration without following step four of the grievance procedure set forth in the CBA is a procedural issue that should be decided by an arbitrator. (Doc. No. 12-1.) On the other hand, Plaintiff argues that because Defendants failed to follow the terms of step four before submitting the dispute to arbitration, Defendants should be barred from proceeding to arbitration, and Plaintiff should not be compelled to participate in the arbitration. (Doc. No. 13.)

Arbitration disputes are divided into two categories: questions concerning "substantive arbitrability," and questions concerning "procedural arbitrability." See, e.g., Bell Atlantic-Pa., Inc. v. Commc'ns. Workers of Am., 164 F.3d 197, 200 (3d Cir. 1999). Substantive arbitrability questions require a determination of whether the parties contracted to arbitrate the subject matter of the dispute, while procedural arbitrability questions require a determination of whether the procedure to proceed to arbitration was followed or excused. Id. It is important to note this

---

LLC v. Morley, No. 13-0176, 2014 WL 5023386, at *3 (E.D. Pa. Oct. 8, 2014).

distinction at the outset because questions concerning the substantive arbitrability of a dispute are resolved by a court, while questions concerning the procedural arbitrability of a dispute are resolved by an arbitrator.  See id. ("Absent a clear expression to the contrary in the parties' contract, substantive arbitrability determinations are to be made by a court and not an arbitrator. . . . [P]rocedural arbitrability issues . . . are resolved as part of the arbitration procedure to which the parties have committed themselves . . . .").

In order to determine whether a dispute is substantively arbitrable, a court must examine whether the subject matter of the dispute is covered by the contract's grievance and arbitration procedure.  Bell, 164 F.3d 197, 200; see AT&T Techs, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) ("[W]hether a collective [] bargaining agreement creates a duty for the parties to arbitrate the particular grievance is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").  When analyzing this question, courts must bear in mind that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'"  Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 580 (1960)).

Thus, the threshold question before the Court is whether the subject matter of the dispute between Plaintiff and Defendants is covered by the grievance and arbitration procedure.  In order to answer this question, the court must assess an arbitration clause like any other contract term. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (directing the court to

"place arbitration agreements on equal footing with other contracts," and "enforce them according to their terms"). Accordingly, where a written agreement indicates intent by the contracting parties to arbitrate the dispute in question, then the matter is substantively arbitrable. Id.

Here, the underlying dispute between Plaintiff and Defendants is the termination of Plaintiff's former employee Walter Puchalski. The grievance procedure applies to "any complaint" that an employee has concerning an adverse employment action. (Doc. No. 1 at 14-15.) Employees proceed through the grievance procedure step-by-step, which may ultimately result in arbitration. In effect, any complaint filed by an employee could potentially be subject to arbitration. (Id.) Accordingly, the dispute between Plaintiff and Defendants regarding whether there was just cause to terminate Mr. Puchalski is "clearly and unmistakably" covered by the grievance and arbitration procedure in the CBA.[2]

Plaintiff does not dispute that Mr. Pulchaski's termination is subject to the grievance and arbitration procedure. Rather, Plaintiff frames the "underlying dispute" as whether Defendants' failure to follow the grievance procedure foreclosed Defendants' ability to pursue arbitration.[3]

---

[2] Even without such language, there is a strong federal policy favoring arbitration of labor disputes: "the inclusion of a broad arbitration clause in a [CBA] gives rise to a presumption of arbitrability which may be rebutted only be 'the most forceful evidence of a purpose to exclude the claim from arbitration.'" Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776, 595 F.3d 128, 131 (3d Cir. 2010) (quoting AT&T Techs., Inc., 475 U.S. at 650).

[3] It is possible that an arbitrator will find that Defendants' failure to comply with Step Four of the grievance procedure forecloses arbitrating the underlying dispute. Accordingly, the grievance would be withdrawn and the underlying dispute would be resolved in favor of Plaintiff. On the other hand, if the arbitrator determines, as Defendants suggest that

> [it] substantially complied . . . by announcing its decision to refer this grievance to arbitration at a Union meeting . . . [or] that the change in the constitution and by-laws governing the local union excused it from complying with a CBA provision

Plaintiff, however, fails to acknowledge the distinction between substantive and procedural questions. As explained above, the subject matter of the dispute is covered by the grievance and arbitration procedure in the CBA. Whether Defendants violated the procedure, thus barring its ability to go to arbitration, is a procedural question to be decided by an arbitrator, as discussed more fully below.

The Supreme Court discussed the difference between substantive and procedural arbitrability in John Wiley & Sons, Inc. v. Livingston. 376 U.S. 543 (1964). There, the employer argued that in considering substantive arbitrability, the union's grievances were not covered by the CBA's arbitration provision. John Wiley, 376 U.S. at 552. In addition, the employer contended that even if the grievances were subject to the arbitration provision, the union's failure to follow the grievance procedure precluded arbitration. Id. at 556.

After determining that the grievances were subject to the arbitration provision, the Court next turned to the employer's argument that "whether 'procedural' conditions to arbitration have been met must be decided by the [C]ourt and not the arbitrator." Id. at 554-57. Specifically, the employer urged the court to conclude that because steps one and two of the grievance procedure had not been followed, it had no duty to enter into arbitration which follows in step three of the procedure. Id. at 556. The Court, however, declined to determine whether the Union could not pursue arbitration because it had bypassed steps one and two of the grievance procedure, reasoning:

---

> incorporating the old version of the constitution and by-laws [or] [t]he arbitrator could rule that any departure by [Defendants] . . . was excused by [Plaintiff's] own conduct [] [o]r, the arbitrator could hold that, absent prejudice to [Plaintiff], any procedural deficiencies by [Defendants] – particularly procedures which are purely an internal Union matter – do not bar her from reaching the merits of the parties' dispute.

(Doc. No. 12 at 12.)

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration . . . . Once it is determined . . . that the parties are obligated to submit the matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

John Wiley, 376 U.S. at 557.  Accordingly, the Court affirmed the Court of Appeals' direction to proceed to arbitration on the question of whether the union had met the procedural prerequisites under the CBA.

The Third Circuit has also examined the distinction between procedural and substantive arbitrability.  In Chauffers, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co., the Third Circuit considered whether a dispute between a union and an employer should be resolved by a court or an arbitrator.  625 F.2d 1092 (3d Cir. 1980).  There, the union and employer had a collective bargaining agreement which provided a three-step procedure to address grievances.  Chauffeurs, 625 F.2d at 1092.  In the event that the dispute was not resolved after step three, either party could proceed to arbitration so long as it was submitted within fifteen calendar days to arbitration and a copy of the submission was mailed to the opposite party at the same time.  Id.  The union initiated the grievance procedure after employees were directed to perform an additional task without extra pay.  Id. at 1092-93.  When negotiations were unsuccessful, the union submitted the grievance to arbitration.  Id. at 1093.

The district court granted summary judgment in favor of the employer after finding that the union had failed to mail a copy of its submission to arbitration to the employer at the same time it submitted the matter to arbitration.  This fact was undisputed by the union, and accordingly, "the court reasoned [pursuant to the grievance procedure] arbitration could not be ordered."  Id. at 1093.

On appeal, the parties did not contest that the underlying dispute concerned the work assignment and was covered by the grievance and arbitration procedures. Thus, the dispute was substantively arbitrable. The parties did dispute, however, whether an arbitrator or the court should determine if the conditions before submitting the matter to arbitration as set forth in the grievance procedure were met. Id. In holding that an arbitrator should determine the significance of the union's failure to simultaneously mail a copy of the submission to the employer, the Third Circuit reasoned as follows:

> The soundness of the rule requiring arbitral resolution even of disputes over the meaning of procedural requirements in a contract is well illustrated by this case. The trial court read the contract clause referring to simultaneous mailing of a copy of the submission to the employer to preclude substantial compliance by having the arbitrator mail the notice. It also read the clause as an absolute precondition to arbitration regardless of the absence of prejudice to the employer. Neither reading is absolutely compelled by the language chosen by the parties . . . . Having found that there was no disputed fact issue over arbitrability of the underlying grievance, the court erred in deciding the dispute over the related procedural issue. It should have granted the Union's motion for a summary judgment directing the parties to arbitrate.

Id. at 1094.

Here, like the employers in John Riley and Chauffeurs, Plaintiff, as the employer, requests that this Court conclude that the Union did not satisfy the preconditions before proceeding to arbitration, and therefore arbitration is foreclosed. However, this reading is not "absolutely compelled" by the wording of the CBA. An arbitrator may determine that the Union's failure to submit the arbitrability of Mr. Puchalski's termination to the Union does or does not foreclose arbitration. As correctly noted by the Union, the arbitrator also may determine that

> [it] substantially complied . . . by announcing its decision to refer this grievance to arbitration at a Union meeting . . . [or] that the change in the constitution and by-laws governing the local union excused it from complying with a CBA provision incorporating the old version of the constitution and by-laws [or] [t]he arbitrator

11

>could rule that any departure by [Defendants] . . . was excused by [Plaintiff's] own conduct [] [o]r, the arbitrator could hold that, absent prejudice to [Plaintiff], any procedural deficiencies by [Defendants] – particularly procedures which are purely an internal Union matter – do not bar her from reaching the merits of the parties' dispute.

(Doc. No. 12 at 12.) Accordingly, the issue of whether the grievance procedure was followed is a procedural question to be decided by an arbitrator.[4]

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 11) will be denied and Defendants' Motion for Judgment on the Pleadings (Doc. No. 12) will be granted. Consequently, this matter will be referred to arbitration. An appropriate Order follows.

---

[4] Having determined that this matter will be referred to an arbitrator, the Court will not address Plaintiff's second request that the Court issue an injunction pursuant to the Norris-LaGuardia Act, 29 U.S.C. § 107. The Court also notes that in order to issue an injunction under the Norris-LaGuardia Act, Plaintiff must satisfy several procedural and substantive requirements, which have not been met here. For this additional reason, the Court will not issue an injunction.